**Jay FORNEY d/b/a Forney
Construction, Appellant,**

v.

**MISSOURI BRIDGE AND CONCRETE,
INC., and Statewide Insurance Company and Republic Western Insurance
Company, Respondents.**

**No. WD 61792.**

Missouri Court of Appeals,
Western District.

Aug. 19, 2003.

Robert H. Schnieders, Oak Grove, for Appellant.

Kevin L. Wibbenmeyer, St. Charles, for Respondents.

Before JAMES M. SMART, P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Jay Forney appeals the judgment of the trial court awarding him $13,306.82 in damages on his breach of contract action against Missouri Bridge and Concrete. He claims that the trial court erred in awarding him $13,306.82 and in denying his motion for new trial on the issue of damages because the award, the amount owed for retainage, misapplied the law in that the proper measure of damages was the balance of the contract. The judgment of the trial court is affirmed.

## Facts

Jay Forney is the sole proprietor of Forney Excavating Company, which is also known as Forney Construction (Forney). Missouri Bridge and Concrete, Inc. (Missouri Bridge) is a Missouri corporation in the business of bridge construction. On April 23, 1999, Missouri Bridge entered into a contract with the Missouri Highway and Transportation Department for the construction of the Nodaway County bridge replacement. On April 25, 1999, Missouri Bridge and Forney entered into a subcontract whereby Forney agreed to perform Class A excavation and compact-ing embankment on the Nodaway County bridge job in exchange for payment in the amount of $438,988.71. The subcontract provided that if Forney was unable to complete the project, Missouri Bridge could take over and complete the project or furnish the necessary materials and employees to remedy Forney's noncompliance at the expense of Forney. It also provided that Forney may rent the equipment or hire the employees of Missouri Bridge to perform part of the subcontract for an agreed upon price.

The Nodaway County bridge job was a larger project than Forney normally performed requiring it to purchase additional equipment and hire additional employees. Forney began work on the job on May 10, 1999. For the first couple of months, Forney performed the work under the subcontract and received scheduled payments. During that time, Missouri Bridge never informed Forney that the character or timeliness of its performance of the subcontract was inadequate. By early August 1999, without any notice to Forney that it was failing to comply with the subcontract, Missouri Bridge moved its own men and equipment onto the job and began part of the excavation and compacting work covered by the subcontract. Soon after, Missouri Bridge presented Forney with invoices billing it for the hours that its men and equipment worked on the project. Forney refused to pay the invoices, and Missouri Bridge deducted the invoice amounts from its scheduled payments to Forney. Forney received payments from Missouri Bridge totaling $252,829.62.

In December 2000, Mr. Forney filed his breach of contract action against Missouri Bridge seeking the sum of $186,159.09, the balance of the contract.[1] Following a trial

---

1. Mr. Forney's petition also included a count for action on bond against Statewide Insur- ance Company and Republic Western Insur-

to the bench, the trial court entered its findings of fact, conclusions of law, and judgment finding that Missouri Bridge breached the subcontract with Mr. Forney by making it impossible for Mr. Forney to substantially comply with its terms. The trial court also found that the proper measure of damages was the contract price less the amount it would have cost the subcontractor to perform the contract and that no probative evidence was produced regarding the expenses of the completion of the contract. The trial court, therefore, awarded Mr. Forney $13,306.82, the amount owed to Mr. Forney as retainage. This appeal by Mr. Forney followed.

## Point I

In his first point on appeal, Mr. Forney claims that the trial court erred in awarding him damages in the amount of $13,306.82. He asserts that the award, the amount owed for retainage, misapplied the law in that the proper measure of damages was the balance of the contract because the contract was for labor only and no evidence was presented that his overhead expenses were saved by the non-completion of the contract.

■■■ In a court-tried case, the judgment of the trial court will be sustained unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Gee v. Payne,* 939 S.W.2d 383, 385 (Mo.App. W.D.1997). "The proper measure of damages is a question of law for determination by the trial court." *Gee,* 939 S.W.2d at 385. The particular facts and circumstances of a case dictate which measure of damages is appropriate. *Id.* Generally, in a breach of contract case, the goal in awarding damages is to put the

non-breaching party in as good a position as it would have been in if the contract had been performed. *Id.*

■■■ The proper measure of damages in a case where an owner breaches a construction contract by preventing the contractor from performing the work is the contract price less the amount it would have cost the contractor to perform the contract. *Juengel Constr. Co. v. Mt. Etna, Inc.,* 622 S.W.2d 510, 514 (Mo.App. E.D. 1981). "This amount, which constitutes lost profits, must be shown with reasonable certainty by proof of facts from which anticipated profits can rationally be estimated." *Id.* Overhead expenses are included in the contractor's total cost saved by nonperformance and, thus, deducted from the contract price only where the owner/defendant proves that such expenses were actually saved by the breach. *Id.* at 515. In the absence of proof that the contractor/plaintiff saved overhead expenses as a result of the owner's breach of contract, overhead expenses are included in the lost profits damages award. *Id.* "The rationale supporting this conclusion is that if the contract had not been breached, fixed business expenses would have been paid from profits remaining after payment of costs directly related to performance of the contract." *Id.*

■■■ Forney failed to introduce evidence from which its lost profits could be ascertained with reasonable certainty. Specifically, Forney failed to present evidence of the costs to complete the subcontract; whether the costs were direct costs associated with performance of the subcontract or fixed overhead expenses. Forney argues that the entire amount of the subcontract constituted profit and overhead expenses. It contends that because Missouri Bridge failed to prove that its overhead

ance Company as sureties guaranteeing Mis-    souri Bridge's performance of the contract.

expenses were saved by the breach, such expenses should have been included in the lost profits damages award. Thus, it contends it was entitled to $192,003.17, the remaining balance of the contract.

While some of Forney's expenses may have constituted overhead expenses, such as payments on its equipment and insurance, certain costs were directly associated with the subcontract such as fuel and labor costs. The evidence in this case showed that Missouri Bridge completed part of the excavation work under the subcontract. Because Forney did not complete the work, it did not incur the expenses directly associated with that part of the work. To award Forney damages that included compensation for expenses that were actually avoided as a result of the breach would create a windfall.

Forney relies on the case, *Werner v. Ashcraft Bloomquist, Inc.,* 10 S.W.3d 575 (Mo.App. E.D.2000), in arguing that, in a labor-only construction contract, the measure of damages for breach of the contract is the unpaid balance of the contract. In the case, a subcontractor sued the contractor for breach of contract after the contractor cancelled the remainder of half-completed work under the subcontract. *Id.* at 576. The contract price was $26,700, and the subcontractor had been paid $13,260 for the work already completed. *Id.* The trial court found that the contractor breached the contract and awarded the subcontractor $13,400. *Id.* The proper measure of damages was not, however, an issue on appeal. The case, therefore, does not stand for Forney's proposition that it was entitled to the balance of the subcontract as damages for Missouri Bridge's breach. Forney's reliance on *Werner* is, therefore, misplaced, and it fails to cite any other case for its proposition.

While the cost of completing the subcontract may not have included the cost of materials, it did include other direct costs such as fuel and labor. Forney failed to present any evidence of these costs. Because no evidence of the cost to complete the subcontract was presented, the profits lost by Missouri Bridge's breach could not be estimated with reasonable certainty. The trial court, therefore, did not err in failing to award Forney damages for lost profits. The first point is denied.

## Point II

In his second point on appeal, Mr. Forney claims that trial court erred in denying his motion for new trial on the issue of damages. He asserts that the trial court, having found that no probative evidence was produced on the proper measure of damages, erred in failing to grant a new trial and hear additional evidence on the issue of damages.

Rule 78.01 provides, in pertinent part, that "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment." An appellate court will not interfere with a trial court's decision to reject a party's motion to reopen a case for additional evidence unless an abuse of discretion appears. *Warren v. Warren,* 784 S.W.2d 247, 255 (Mo.App. W.D.1989).

Forney had ample opportunity during trial to present evidence on the proper measure of damages; specifically, the costs of completing the subcontract. Forney did not ask the trial court to reopen the evidence until after the court entered its judgment concluding that no probative evidence was produced regarding the expenses of the completion of the contract. "Courts cannot reopen cases merely because a party has had a change

of heart regarding the importance of evidence it chose not to introduce when it first had the opportunity to do so." *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 328 (Mo.App. W.D.2000)(quoting *Warren,* 784 S.W.2d at 256). The trial court did not abuse its discretion in denying Forney's request for a new trial to introduce additional evidence on the issue of damages. Point two is denied.

The judgment of the trial court is affirmed.

SMART, P.J., and HARDWICK, J., concur.