**FIRE SPRINKLERS, INC.,**
Plaintiff/Appellant,

v.

**ICON CONTRACTING, INC., et al.,**
Defendants/Respondents.

No. ED 91426.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 17, 2009.

Robert Edward Jones, Saint Louis, MO, for Appellant.

Richard Felix Huck, III, Saint Louis, MO, for Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Fire Sprinklers, Inc. (FSI) appeals from the trial court's judgment in favor of Icon Contracting, Inc. (Icon) for $58,668 on Icon's counterclaim against FSI for breach of contract. We affirm as modified.

*Factual and Procedural Background*

U.S. Paint (USP) utilizes, stores, and distributes flammable liquids. In June 2003, Icon entered into an a Subcontract Agreement (Agreement) with FSI pursuant to which FSI agreed to design and install a foam fire protection system for the USP facility in St. Louis. The Agreement declared that time was of the essence and that if FSI failed to commence work as requested or to continue work with adequate manpower or equipment, Icon could terminate the Agreement with 24 hours' written notice. In the event of such termination, FSI was responsible for reimbursing Icon for the additional costs Icon expended to perform the work.

In the Agreement, FSI agreed to comply with "all codes, statutes, rules and regulations governing the work." Upon being notified of defects in its work, FSI agreed to remedy the defects within 10 days and, if it failed to do so, Icon was entitled to remedy the defects at FSI's expense. The Agreement provided that if Icon prevailed in an action arising out of the Agreement, Icon was entitled to recover its reasonable attorney's fees and costs and expenses incurred in the action.

The fire suppression system plan required approval by the St. Louis Fire Department (Fire Department or the Department) prior to installation. The approval process required (1) submission of a permit application, (2) review of FSI's design by the Department, (3) upon approval of the design, issuance of a permit by the Department, and (4) upon final inspection and approval of the installed system (the "acceptance test") by the Department, the "closing out" of the permit.

In July 2003, FSI submitted its design and permit application to the Fire Marshal for review of the plans for compliance with fire codes and standards. In October 2003, the Fire Marshal began reviewing the plans. The Fire Marshal became skeptical about the nature of the materials stored at the facility and put the plans on hold because FSI's plans reflected the facility stored Class 1B liquids while USP had previously represented to the Marshal, albeit incorrectly, that the facility stored a more flammable class of liquids. FSI immediately began efforts to persuade the Fire Marshal that USP was a Class 1B facility. FSI eventually succeeded by obtaining a hazard analysis from USP's insurer. In May 2004, the Fire Marshal began reviewing the plan once again.

In October 2004, the Fire Department completed its review and in November 2004, the Department issued the permit. FSI, however, had begun installing the system prior to obtaining the permit, most likely with the knowledge and approval of Icon and USP.

In December 2004, the Fire Department attended an acceptance test of the system. At that time, the fire pump appeared to pass its flow test but the system as a whole failed due to a lack of documentation showing that the system's foam component had passed an earlier testing. Sometime after the initial acceptance test, the Fire Department learned that the pump installed and tested was a 1500 gallons per minute (GPM) pump instead of a 1250 GPM pump as represented by FSI. The size of the pump affects other parts of the system, including whether or not an additional water supply is necessary to supply the pump.

The trial court found FSI's misrepresentation to the Fire Department regarding the flow size of the pump was knowing and intentional, and compounded the existing credibility problems the companies had with the Fire Department. Upon learning of FSI's misrepresentation, the Fire Marshal proceeded with the approval process very slowly and found additional shortcomings with the fire suppression system.

On February 3, 2005, Icon notified FSI of its dissatisfaction with the incomplete work and lack of approval by the Fire Department, and put FSI on notice that it intended to have FSI's work reviewed by another company. At that time, FSI had still failed to instill the dual water supply needed for the larger pump as FSI had represented to the Fire Department it would do.

As of March 1, 2005, the system had not passed the Fire Department's acceptance test. Icon notified FSI by letter that Icon was terminating the Agreement and that the costs it encountered to complete FSI's work would be at FSI's expense. On March 14, 2005, FSI filed a mechanic's lien against the USP property.

In March 2005, Icon hired TVA Fire and Life Safety, Inc. (TVA) to evaluate FSI's work. Icon also hired Guardian Fire Protection (Guardian) to evaluate the water supply issue and to perform a fire pump test on the USP system. Guardian found that the pump did not have an adequate water supply to meet the flow requirements of the pump. Guardian reported this finding to the Fire Department and the Department concurred that the water supply was inadequate. Icon hired Guardian to install a 6-inch water supply main to supplement the water supply to the pump.

On March 16, 2006, FSI filed an amended petition for mechanic's lien against USP's property and a claim in quantum meruit. On November 6, 2006, Icon filed its Amended Answer and Set-off and Counterclaim for Breach of Contract.

On January 25, 2008, the trial court entered its final judgment and order. The court found that FSI materially breached the Agreement by intentionally misrepresenting to the Fire Department the size of the pump installed and by failing to timely install a new water supply line to the pump. The court found Icon's termination of the Agreement was justified and that Icon had proved its breach of contract counterclaim by the greater weight of the credible evidence.

The court found that due to FSI's material breach of the Agreement, Icon had no legal or contractual obligation to pay FSI $46,588 in contract retainage. The court noted that as a result of Icon's contribution to the overall situation, not all of the additional work to complete the project could be charged to FSI alone and that Icon must bear some responsibility for the additional costs. The court found that Icon's damages from FSI's breach of contract were the $42,165 Icon paid to Guardian to install a second water main to adequately supply water to the pump; $850.00 Icon paid to Guardian to conduct an additional pump test; and $1,575 Icon to paid TVA for engineering consultation services. The court granted FSI a set-off of $5,800 for the additional engineering costs incurred by FSI in correcting the flammable liquids classification issues. The court found in favor of USP and against FSI on the mechanic's lien and awarded Icon $4,878 for the bond costs it incurred to indemnify USP with respect to the lien. The court also awarded Icon $15,000 for reasonable attorney's fees incurred in connection with the action. In sum, the court entered judgment in favor of Icon for $58,668.

### Point on Appeal

On appeal, Appellant argues that the trial court erred in both discharging Icon's balance owed under the Agreement and affirmatively awarding damages against FSI for Icon's cost to complete FSI's work, as it impermissibly yielded Icon a double recovery. FSI contends it substantially performed its work under the Agreement and, thus, Icon was only entitled to its cost to complete FSI's work.

### Standard of Review

■ In a court-tried case, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### Discussion

On appeal, the parties only dispute how the trial court calculated the damages arising directly from FSI's breach and do not dispute the trial court's award to FSI for additional engineering costs or to Icon for attorney fees and bond costs. FSI argues that it substantially performed under the Agreement so Icon's damages are calculated by setting-off Icon's damages by the $46,588 contract retainage owed to FSI under the contract.

■ The first issue we must address is FSI's contention that it substantially performed under the Agreement. The trial court found that FSI materially breached the contract. Whether a breach of contract is material is a question of fact. *Curt Ogden Equipment Co. v. Murphy Leasing Co., Inc.*, 895 S.W.2d 604, 609 (Mo.App. E.D.1995).

"The doctrine of material breach is simply the converse of the doctrine of substantial performance. Substantial performance is performance without a material breach, and a material breach results in performance that is not substantial." E. Allen Farnsworth, Contracts, 585,

§ 8.16 (3d ed.1998). See also 8 Corbin on Contracts, 369 n. 89, 372, § 36.11 (Revised ed.1999).

FSI specifically stated at oral arguments and in its brief that it does not challenge the trial court's findings of fact, which would include the court's finding that FSI materially breached the contract. In arguing that it substantially performed the contract, FSI fails to provide any substantive analysis on how the court's finding of a material breach can be reconciled with their argument. In light of the trial court's finding that FSI materially breached the contract, we find that FSI's contention that it substantially performed under the contract is not supported by the record.

■ Next, FSI argues that even if its performance fell short of "substantial performance," the measure of damages is still the same and the trial court's damage award constitutes reversible error as a double recovery. The crux of FSI's argument is that the court erred in both discharging Icon's remaining payment obligations under the contract and in charging Icon's costs of completion to FSI. FSI's analysis is flawed in that it continues to apply the law pertaining to substantial performance and fails to analyze the law of *contracts* when there is a material breach. At the same time, Icon insists that it can be relieved of its remaining performance under the contract due to FSI's material breach and recover the costs of completion without any set-off because setting off their damages by the contract retainage would reward FSI with the contract price even though FSI materially breached. Both parties skirt the issue, failing to accurately analyze the consequences of FSI's breach and identify the correct method of measuring damages.

■ If one party materially breaches a contract, the aggrieved party may cancel the contract and be relieved of its performance under the contract. *Curt Ogden Equipment Co.,* 895 S.W.2d at 608–609. Here, the trial court specifically found that Icon was justified in terminating the contract due to FSI's material breach. As such, the trial court did not err in finding that Icon was relieved of its obligation to perform under the contract and had no legal or contractual obligation to pay FSI the $46,588 contract retainage.

At the same time, the trial court also found that Icon was damaged by FSI's breach of contract by having to hire outside help to review and complete FSI's work. Neither party disputes this particular finding, and likewise, this Court finds no error on this point. However, the calculation of Icon's damages does not end there.

■ If a breach is material, the nonbreaching party can terminate the contract and sue for total breach. *Campbell v. Shaw,* 947 S.W.2d 128, 131 (Mo.App. W.D. 1997); See also J. Calamari & J. Perillo, Contracts, 466, § 12–10 (2nd ed.1977).

> Damages [for a total breach] are calculated on the assumption that neither party will render any remaining performance. They therefore compensate the injured party for the loss that it will suffer as a result of being deprived of the balance of the other party's performance, minus the amount of any savings that resulted from the injured party not having to render any remaining performance of its own.

Farnsworth, Contracts, 581, § 8.15. See also 11 Corbin on Contracts, 608, § 60.1. The benefit a terminating party receives by saving on expenditures it would have incurred absent termination of the contract is referred to as a "cost avoided." Farnsworth, Contracts, 794, § 12.9.

Application of this principle means that Icon's damages are calculated by taking the amount of the loss it suffered as a result of FSI's breach, i.e. the cost of completion or $44,590, and subtracting the amount Icon saved by not having to complete its performance under the contract, i.e. the contract retainage Icon was relieved of paying or $46,588. This calculation reflects the savings Icon sustained when it chose to terminate the contract and is necessary in determining the damages that Icon actually suffered.

■ "The goal in awarding damages is to put the non-breaching party in the same position as if the contract would have been performed." *Guidry v. Charter Communications, Inc.*, 269 S.W.3d 520, 532 (Mo. App. E.D.2008). The non-breaching party cannot be put in a better position than it would have enjoyed had both parties performed under the contract. *Id.* at 533.

Here, if the parties had performed under the contract, FSI would have installed a code compliant, fully functioning foam fire protection system and Icon would have paid FSI in full. By terminating the contract as a result of FSI's material breach, Icon was forced to expend $44,590 to review and complete FSI's work, yet was relieved of its obligation to pay $46,588 remaining on the contract.

■ "The law is clear that a party is not entitled to multiple recoveries for one injury." *KC Excavating and Grading, Inc. v. Crane Construction Co.*, 141 S.W.3d 401, 408 (Mo.App. W.D.2004). See also *Trident Group, LLC v. Mississippi Valley Roofing, Inc.*, 279 S.W.3d 192 (Mo.App. E.D. 2009) (a party is only entitled to be made whole once and may not recover more than one full recovery for a single injury).[1] As such, the trial court erred in failing to consider Icon's cost avoided in its damages assessment, and in awarding Icon damages in excess of its actual damages.

### Conclusion

The judgment of the trial court in favor of Icon on Icon's counterclaim is affirmed as modified, and judgment is entered in favor of Icon and against FSI in the amount of $12,080.[2]

ROBERT G. DOWD, JR., P.J., and CLIFFORD H. AHRENS, J. concur.

---

1. This case has a pending Motion for Rehearing or Transfer to the Missouri Supreme Court.

2. The total award to Icon ($42,165, $850, $1,575, $15,000 and $4,878) minus Icon's cost avoided ($46,588) and FSI's set-off for additional engineering costs ($5,800).